UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 6:10-CR-25-GFVT-1 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| CHARLES EDGAR POLLY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

The Court considers a Motion to Suppress and a Motion for *Franks* Hearing filed by Defendant, Charles Edgar Polly. (DE #27, 28). These motions were referred to the undersigned for a recommended disposition. (DE #17-1, 29). On September 3, 2010, the Court heard oral arguments on Defendant's motions. As described below, having reviewed the briefs and arguments submitted by counsel, the Court recommends that the District Court **DENY** Defendant's motions.

## I. BACKGROUND

On May 29, 2009, Keith Berry, a Deputy with the Jackson County Sheriff Department, received information from a federal official that marijuana plants were being cultivated in the Bernstadt Quad in Laurel County, Kentucky.[1] (Aff. for Search Warrant,

---

[1]      As Defendant is challenging a search of his home that was conducted pursuant to a warrant, the Court must "look only to the four corners of the affidavit" to determine whether the search was supported by probable cause. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003)). Accordingly,

Aug. 21, 2009, Attach. A [hereinafter Attach. A] § V.1). Between June 1, 2009, and June 8, 2009, Berry's investigation uncovered 89 marijuana plants in the Quad spanning four plots. (*Id.* §§ V.2-V.4). Berry placed unmanned surveillance cameras on the two plots containing the most plants and reviewed the camera footage frequently.[2] (*Id.* §§ V.2, V.4). On June 18, 2009, at 4:42 a.m., the camera captured an individual shining a flashlight on the marijuana plants, though no distinguishing characteristics of this individual could be discerned due to the level of darkness. (*Id.* § V.6). On June 13, 2009, at 6:12 p.m., the same camera captured a male subject cultivating the marijuana plants. (*Id.* § V.7). The male subject was wearing a red ski mask, a blue short sleeve t-shirt, and blue jeans. (*Id.*). Berry was able to discern that this individual had gray hair, had a large stomach that extended beyond his belt line, and was at least 60 years of age. (*Id.*). On July 20, 2009, at 6:28 p.m., the camera again captured a male subject wearing a red ski mask, a blue long sleeve shirt, and blue jeans cultivating the plants. (*Id.* § V.8). In his affidavit, Berry opined that the male subject seen cultivating the marijuana on July 20, 2009, was the same individual seen cultivating the marijuana on June 13, 2009. (*Id.*). On July 28, 2009, Berry placed an additional video camera at the mouth of an ATV trail that led to each of the plots under surveillance, and later moved the camera to a more

despite representations as to what evidence may be presented at a *Franks* hearing, the facts as set forth herein are taken solely from Berry's affidavit that was submitted to the state court judge in support of the search warrant.

[2]     The first plot on which Berry placed a surveillance camera contained 26 plants, but that camera was later removed because it was not functioning properly. (Attach. A §§ V.2, V.5). The other surveillance camera was placed on a plot containing 58 marijuana plants. (*Id.* § V.4).

strategic (but undisclosed) location on August 18, 2009, hoping to catch the male subject on camera before he placed the mask over his head. (*Id.* §§ V.8, V.12).

In addition to placing the cameras on or near the plots and observing the video recorded by those cameras, Berry performed other investigative work. On August 7, 2009, Berry observed that the closest residence to the entrance of the trail was 7156 North Highway 25. (*Id.* § V.10). A car parked at the residence was registered to Polly's co-Defendant, Ann Marie Smith. (*Id.*). Berry learned that Defendant also lived at the residence, and verified this information through a driver's license check. (*Id.*). He also learned that Defendant was in his late sixties. (*Id.*). On the same day, Berry and another law enforcement officer visited the residence and observed Defendant sitting on the tailgate of his truck. (*Id.* § V.11). Through interactions with Defendant, Berry personally observed Defendant's body type and mannerisms. (*Id.*). Berry again drove past Defendant's residence on August 18, 2009, and this time noticed a yellow ATV sitting in the front yard. (*Id.* § V.13).

Berry reviewed the footage captured by the video cameras again on August 21, 2009. On August 18, 2009, at 4:00 p.m., the camera placed at the entrance of the trail recorded a male subject riding a yellow ATV. (*Id.* § V.14). The male subject was wearing a blue t-shirt and blue jeans, and had a body type consistent with the masked individual seen cultivating the marijuana on prior occasions. (*Id.*). On August 21, 2009, although it was dark, the same camera recorded the headlights of an ATV driving toward the marijuana plots at 4:43 a.m., and the taillights of an ATV driving away from the

marijuana plots at 5:19 a.m. This same recording included a silhouette of an individual that was consistent with Defendant. (*Id.*). The camera placed on the marijuana plot also captured footage of an individual two times on August 21, 2009. At 4:56 a.m., the camera captured an individual shining a flashlight on the marijuana plants, but the subject could not be identified because of the level of darkness. (*Id.* § V.15). At 7:14 a.m., the camera captured an individual wearing a red ski mask, a blue long sleeve shirt, and blue jeans cutting the tops off the marijuana plants, and putting them in a container. (*Id.*). This individual is then seen carrying the container out of the marijuana plot. (*Id.*). Berry opined that the individual seen carrying the marijuana off the plot on August 21, 2009, appeared to be the same individual seen cultivating the marijuana on both June 13, 2009, and July 20, 2009, and that he believed it was the same individual riding the yellow ATV on August 18, 2009. (*Id.*). Berry further opined that he believed the individual was Defendant, Charles Edgar Polly. (*Id.* § V.16).

Based upon these facts as communicated to a state court judge through Berry's affidavit, the judge issued a warrant authorizing the search of Defendant's residence. Defendant contends that this information conveyed to the state court judge "utterly fails to establish probable cause." (Mem. Supp. Mot. to Suppress at 10). He contends that the affidavit establishes only two things: "There was marijuana being grown by an old fat guy. Second, Charles Polly was an old fat guy who lived nearby." (*Id.* at 11). At most, Defendant argues that this information created suspicion requiring further investigation. (*Id.*). Defendant also argues, under *Franks v. Delaware*, 438 U.S. 154 (1978), that Berry

intentionally or recklessly omitted from his affidavit other activity captured by the video cameras that, if included in the affidavit, would have failed to support probable cause. (*Id.*).[3]

## II. ANALYSIS

### A. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." U.S. Const. amend. IV. Probable cause to issue a search warrant exists where "given all the circumstances set forth in the affidavit .

---

[3] Defendant makes a similar argument in his motion to suppress. He requests that the Court consider the information omitted from the affidavit and determine whether the search warrant would still be supported by probable cause. However, as Defendant conceded during oral argument, such information cannot be considered by the Court in support of a motion to suppress unless Defendant first shows that a *Franks* violation occurred. (Hr'g Tr. 27:4-12, Sept. 3, 2010). *See also United States v. Woods*, 802 F.2d 460 (table), 1986 WL 17501, at *1 (6th Cir. 1986) ("a defendant may go outside of the affidavit to challenge probable cause to issue a search warrant only by making a substantial showing that the affidavit contains deliberate falsehoods or reckless disregard for the truth") (citing *Franks*, 438 U.S. 154). As discussed below, Defendant has not made the requisite *Franks* showing. Therefore, the Court does not reach the merits of this aspect of Defendant's motion to suppress and only addresses whether the four corners of Berry's affidavit supported a finding of probable cause.

That the United States would not contest certain of the omitted facts does not alter the Court's analysis. If it did, the preparation and review of an affidavit offered in support of an application for a search warrant would virtually always lead to a potentially limitless factual analysis. In other words, "an allegation of omission 'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)); *see also United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (stating "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly. If, as the district court held, this type of 'intentional' omission is all that Franks requires, the Franks intent prerequisite would be satisfied in almost every case."). The required *Franks* showing guards against such an unworkable result. Of course, the United States made no concession concerning the effect of any omitted factual information.

. . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This Court, in reviewing whether the state court judge's decision to issue the warrant was supported by probable cause, must not engage in line-by-line scrutiny of the affidavit. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (citing *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). Rather, "[t]he affidavit should be reviewed in a commonsense . . . manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause . . . ." *Id.* (citing *Greene*, 250 F.3d at 479). This Court will set aside the issuing judge's probable cause determination only if the judge did not "'ha[ve] a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Id.* (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). The issuing judge's "determination of probable cause is afforded great deference, and that determination should be reversed only if the [judge] arbitrarily exercised his discretion." *Id.* (citing *Greene*, 250 F.3d at 479).

Here, the totality of the circumstances provided in Berry's affidavit supports the issuing judge's probable cause determination. Contrary to the position taken by Defendant, the information supplied by Berry's affidavit was not limited to a description of the masked individual captured by the cameras, *i.e.*, "an old fat guy," and a matching description of Defendant who lived nearby. In addition to Defendant fitting the physical description of the masked individual seen cultivating the marijuana, Berry was able to observe Defendant's mannerisms through interactions between Defendant and law

enforcement officers (Attach. A § V.11), then compare those mannerisms to those of the individual seen cultivating and collecting the marijuana plants, and, finally, assess whether Defendant was the masked individual captured by the video cameras. (*Id.* §§ V.15-V.16).

Furthermore, according to the affidavit, Defendant (1) matched the description of the individual seen on the marijuana plots and (2) lived at the residence that was the closest to the entrance of the ATV trail that led to the plots. (*Id.* § V.10). Berry also observed a yellow ATV at Defendant's residence that matched the description of an ATV captured by the cameras on the trail that connected the marijuana plots together. (*Id.* § V.14). Finally, an individual was on that yellow ATV that matched Defendant's description and the description of the masked individual seen cultivating and collecting the marijuana plants. (*Id.*).

Based upon the information supplied by Berry in his affidavit, the Court finds that the issuing judge "'had a substantial basis for finding that the affidavit established probable cause[.]'" *Woosley*, 361 F.3d at 926 (quoting *Davidson*, 936 F.2d at 859). Therefore, the Court concludes that the search warrant, on its face, met the requirements of the Fourth Amendment.

Additionally, even if the warrant lacked probable cause, the evidence obtained as a result of the search should not be suppressed at trial. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that "the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively

reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918-21).

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon*, 468 U.S. at 921 (internal markings and quotation omitted). Here, Berry presented the evidence he collected to the neutral and detached judge to determine whether the evidence was sufficient to support a finding of probable cause. Because the judge concluded that probable cause existed, Berry was able to act in objectively reasonable reliance upon the issuance of the warrant, and suppression should therefore be denied. *Laughton*, 409 F.3d at 748.[4]

Defendant also argues that the *Leon* good-faith exception does not apply because the affidavit in this case was "so lacking in indicia of probable cause that a belief in its existence [was] objectively unreasonable . . . ." *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 914-23). The Court disagrees. An affidavit is "so lacking in indicia of probable cause" when it "contains only 'suspicions, beliefs, or conclusions, without

---

[4]     In his motion to suppress, Defendant questions whether the Court may look beyond the four corners of the affidavit to determine whether the good-faith exception to the exclusionary rule protects Berry's reliance upon the search warrant. (D.E. 28 at 12-13). Because probable cause is well-supported by the affidavit as described above, no such issues arise under *Laughton* or *Frazier*.

providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge. . . .'" *Id.* (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). Here, Berry's affidavit does not simply contain "suspicions, beliefs, or conclusions." Rather, it describes in detail the manner in which surveillance cameras were set up on the marijuana plots and at the entrance of the ATV trail, as well as the footage recorded on those video cameras. The affidavit also discusses the manner in which Berry learned Defendant's identity and his physical characteristics. Finally, the affidavit describes the similarity between Defendant's physical characteristics and those of the masked individual seen on the video cameras cultivating and collecting the marijuana. Under these circumstances, Berry was entitled to rely upon the state court judge's probable cause determination.

## B. *Franks* Challenge

Although "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant[,]" *Franks*, 438 U.S. at 171, a law enforcement officer cannot act in objectively reasonable reliance upon the issuance of the warrant if he intentionally or recklessly included or omitted material information in the affidavit. *See id.* at 155-56; *Leon*, 468 U.S. at 914-15. However, before a defendant will have an opportunity to make such a showing at an evidentiary hearing—also known as a *Franks* hearing—he must, in the case of an alleged omission, (1) make a "substantial preliminary showing" that "the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit" and (2) show that

probable cause would no longer exist if such omitted information were considered by the issuing judge. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (quoting *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993)). Every omission is intentional "insofar as it is made knowingly[,]" *Colkley*, 899 F.2d at 300, so *Franks* only "protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate[,]" *id.* at 301 (emphasis in original) (citation omitted). Therefore, "a *Franks* hearing is only merited in cases of omissions in 'rare instances.'" *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998)).

Here, Defendant argues that the affidavit is deficient because the surveillance cameras recorded images of other traffic on the ATV trail that Berry did not include in his affidavit, and the affidavit did not fully describe the trails or types of video cameras installed by Berry. (*See* Mot. for *Franks* Hr'g at 2-4). According to Defendant, the activity reported by Berry in his affidavit only accounted for 14% of the vehicular traffic along the trail and 18% of the ATV traffic. (Mem. Supp. Mot. to Suppress at 7). Defendant also points out that his residence may have been the closest to the entrance of the ATV trail, but Berry failed to identify how close Defendant's residence actually was to the trail. (*Id.*). Likewise, Defendant argues that Berry did not identify whether there were multiple means of ingress and egress to these plots or whether the cameras were motion activated. (Mot. for *Franks* Hr'g at 4).

Defendant has not made the type of preliminary showing required to hold an

evidentiary hearing on this issue.  Defendant has made no showing that the omissions were made for the purpose of misleading the state court judge or in reckless disregard of whether it would mislead the judge.  Instead, Defendant appears to have requested a *Franks* hearing in order to "explore and establish these omitted facts."  (*Id.* at 6).  But "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."  *Franks*, 438 U.S. at 171.  Defendant's allegations of intentionality or recklessness "must be accompanied by an offer of proof. . . . [T]hey should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."  *Id.*  On this record, this is not a "rare instance" that merits a *Franks* hearing.

## III.  RECOMMENDATION

For these reasons discussed herein, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion to suppress and motion for a *Franks* hearing.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute.  As defined by § 636(b)(1) and Federal Rule of Criminal Procedure 59(b), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court.  The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics.  Failure to object in accordance with Rule 59(b) waives a party's right to

review.

       This the 16th day of September, 2010.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**