UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal No. 10-25-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHARLES E. POLLY, | ) | **& ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

At a sentencing hearing held on March 14, 2011, the Court received evidence concerning the number of marijuana plants that the defendant, Charles Polly, was responsible for cultivating. The Court also advised the parties that it was considering an upward variance based on Polly's prior manslaughter conviction, his abusive relationship with Ann Marie Smith, and other factors. The Court promised to rule on the quantity of marijuana plants, resolve Polly's objections to two gun-related enhancements, and advise Polly of the possible grounds for an upward variance in a written opinion. This opinion fulfills that promise.

### I. Quantity of Marijuana

Polly pled guilty to growing 50 or more marijuana plants, in violation of 21 U.S.C. § 841(a)(1). That plea exposes him to a statutory maximum sentence of 20 years. § 841(b)(1)(C). The plea agreement, however, acknowledges that the United States would "argue, at sentencing, that [Polly] manufactured 100 or more marijuana plants," R. 54 at 3, which would require the Court to impose a mandatory minimum sentence of five years. § 841(b)(1)(B)(vii). To prevail, the United States must establish by a preponderance of the evidence that Polly grew or cultivated

100 or more marijuana plants. *See United States v. Conatser*, 514 F.3d 508, 528 (6th Cir. 2008).

To this end, the United States presented the testimony of Officer Keith Berry at the sentencing hearing. Officer Berry is a task force officer with the Jackson County Sheriff's Office, assigned to the United States Forest Service. R. 71 (Tr.) at 4. He investigated Polly's marijuana cultivation activities. *Id.* As explained below, Officer Berry's testimony establishes that Polly more likely than not grew 100 marijuana plants.

Authorities found seven different marijuana plots in the woods near Polly's home. The United States argues that Polly grew a total of 104 marijuana plants on all seven of these plots combined. Polly does not dispute that he cultivated marijuana on five of these plots (those numbered one, two, three, four, and seven). And he does not dispute that he grew at least 97 marijuana plants on those five plots. But he contends that the total count should stay below 100 because (1) he should only be held responsible for 57 plants, rather than 59 plants, from plot three, and (2) he should not be held responsible for the five plants found in plots five and six.

First, Polly argues that he should only be held responsible for 57 plants from plot three, rather than 59 plants, as the government argues. (The government's total count of 104 plants includes 59 plants from plot three.) Officer Berry testified that, when he first came upon plot three, he manually counted 59 plants. Tr. at 13, 31-32. Later, when he went back to plot three and counted the plants using a video camera, he only counted 57 plants. Tr. at 13-14. Officer Berry testified that he was certain that his first count was accurate. Tr. at 14 ("Well, I mean, I know I accurately counted 59 plants in the first—in the first initial count. . . . So, I mean, I know that there was 59 plants there."); Tr. at 31-32 (Q: "When you first did your survey, you are

2

confident and certain as you sit here today there were 59 plants there?" A: "Yes, sir."). And Officer Berry gave a credible explanation for why the video count was different. Tr. 14 ("The second one, as I'm guiding the camera, I'm walking backwards, talking. So, I mean, I could have overstepped one or two or—because it was thick. It was pretty thick in that area with briars and just all kind of other stuff."). Considering Officer Berry's extensive experience with marijuana cultivation investigations (he has 20 to 30 under his belt, Tr. at 4) and his confident and forthright demeanor during the hearing, the Court finds Officer Berry's testimony to be credible. Officer Berry was certain that, when he did the first count, there were 59 plants in plot three. Accordingly, the Court finds that plot three more likely than not contained 59 plants.

This brings the total number of plants up to 99. The government need only tie Polly to one more plant to trigger the mandatory minimum. In plot five, authorities found one marijuana plant growing in a plastic bucket. Officer Berry testified that the bucket had been painted black, and that the paint had started to chip off. Tr. at 6, 32-33. This plant was much smaller than the 99 plants in the other plots. Whereas they were fully mature and measured from twelve to fourteen feet in height, the plant in the black bucket was only three feet tall. Tr. 25. Despite this difference in height, the evidence in the record still demonstrates that Polly more likely than not also cultivated the plant in plot five. First, and most importantly, officers found the same kind of bucket in which the plant was growing—with chipped black paint—in Polly's yard. Tr. 6, 32-33. This factual connection alone is strong evidence linking the plant to Polly. *See United States v. Hemetek*, 393 F. App'x 67, 70 (4th Cir. 2010) (holding that defendant's conviction for cultivating 100 or more marijuana plants was supported by substantial evidence where "some

plants in a plot were found in pots similar to pots found at [defendant's] house"). Additionally, plot five was connected to the same system of ATV trails that linked Polly's house and the other plots. Tr. 5. And, although Officer Berry acknowledged that he observed other individuals using the ATV trails besides Polly, Tr. 21, he testified that Polly was the only person he actually observed tending to the marijuana plots. Tr. 10. Although the plant in plot five was considerably shorter than the other plants, Officer Berry gave a clear and logical explanation for why this might be so. Officer Berry testified that it is common for marijuana growers to have both an early season crop and a late season crop. Tr. 33. A good reason for doing so is to avoid the federal mandatory minimum. Tr. 36. Indeed, the fact that there were exactly 99 large plants suggests that this was precisely Polly's goal. On these points, too, the Court finds Officer Berry to be credible, based both on his demeanor during the hearing and his extensive experience with marijuana cultivation investigations. Accordingly, the Court finds by a preponderance of the evidence that Polly was responsible for cultivating the one marijuana plant found in plot five.

The evidence linking Polly to the four plants found in plot six is more tenuous. Those plants were, like the plant in plot five, only three or four feet tall. And although they were connected to the same system of ATV trails, there was no direct evidence, like the bucket with chipped black paint, linking them to Polly. Accordingly, the Court cannot find by a preponderance of the evidence that Polly cultivated the plants in plot six. But it is really a moot point. The United States has already reached the magic number. They have proven, by a preponderance of the evidence, that Polly cultivated 99 plants in plots one, two, three, four, and seven combined, and one plant in plot five. Therefore, because Polly cultivated 100 marijuana

4

plants, he qualifies for the five-year mandatory minimum. 21 U.S.C. § 841(b)(1)(B)(vii). That mandatory minimum is also automatically his recommended Guidelines range. U.S.S.G. § 5G1.1(b).

## II. Gun Enhancements

Polly also objects to two enhancements that he received in the Pre-Sentence Report for possessing guns in connection with his drug cultivation activities. Because sustaining or overruling these objections would simply oscillate Polly's advisory guidelines range below the mandatory minimum, the Court need not resolve them.

## III. Possible Upward Variance

During the sentencing hearing, the Court advised Polly that it was considering an upward variance in light of several factors. Here, the Court spells out the possible rationales for an upward variance, along with supporting case law, so that the parties will be prepared to discuss the issue at the next sentencing hearing on May 2, 2011.

First, Polly's criminal history score—zero—may not adequately reflect the seriousness of his past criminal conduct. As the Pre-Sentence Report states, Polly shot and killed his ex-wife and her new husband on Christmas Day, 1979. The murder took place in front of Polly's then-twelve-year-old daughter. Polly was convicted of first degree manslaughter in state court. Because the conviction is more than fifteen years old, Polly does not receive any criminal history points for it under the Guidelines. U.S.S.G. § 4A1.2(e)(1). However, the Guidelines authorize an upward departure where "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3(a); *see United*

*States v. Jennings*, No. 08-6413, 2011 WL 71459, at *2 (6th Cir. Jan. 10, 2011) ("The guidelines allow district courts to consider uncounted criminal convictions . . . when fashioning a sentence."). The Sixth Circuit has said that such departures are "expressly encouraged" where "the recommended sentencing range does not adequately account for the defendant's past criminal conduct." *United States v. Herrera-Zuniga*, 571 F.3d 568, 582-83 (6th Cir. 2009). In *United States v. Hall*, 381 F. App'x 390, 395-96 (5th Cir. 2010), the Fifth Circuit affirmed a substantial upward variance (to 132 months from a Guidelines range of 51-63 months) where the district court considered the defendant's "unusual propensity towards violence" in light of his 1990 manslaughter conviction for brutally shooting and stabbing his ex-wife. Therefore, in light of § 4A1.3(a) and *Hall*, Polly's prior manslaughter conviction may justify an upward variance, even though it is not technically counted under the Guidelines because of its vintage.

Second, as the Pre-Sentence Report details in paragraph 79, Polly has had an abusive relationship with his co-defendant Ann Marie Smith. Polly began a sexual relationship with Smith when she was only 15 years old and he was 41. Smith described the relationship as "extremely abusive," and said that "Polly was a jealous, violent individual who forced her to withdraw from school with his threats." She further said that Polly kept her "isolated" and "physically and mentally abused" her. Polly did not object to this part of the Pre-Sentence Report. And Ms. Smith herself provided troubling details of her relationship with Polly during her sentencing hearing on January 24, 2011. Other courts have allowed substantial upward variances for defendants with a sustained history of abusive conduct. *See, e.g.*, *United States v. Dominguez-Rodriguez*, 2010 WL 4369798, at *2 (5th Cir. 2010) (affirming upward variance to

48 months from Guidelines range of 12-18 months based on defendant's pattern of child abuse and molestation and prior conviction for lewd assault acts against a child); *United States v. Gonzalez*, 65 F. App'x 509, 509 (5th Cir. 2003) (affirming upward departure based on defendant's "long history of abusive and violent relationships with women and his own children").

Finally, under his current Guidelines calculations, Polly will receive no additional punishment for his Social Security fraud. Under U.S.S.G. § 3D1.4(c), Polly will receive no additional time because the total offense level for the Social Security fraud is nine or more levels less than the total offense level for his other offenses. This part of Polly's Guidelines calculation is in tension with several of the sentencing factors enumerated in 18 U.S.C. § 3553(a), including the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense." § 3553(a)(2)(A). Polly's Social Security fraud is entirely separate from, and harms society in a different and distinct way than, his gun and drug offenses. Therefore, an upward variance may be justified to adequately account for this crime.

For these reasons—Polly's criminal history, his abusive relationship with Ann Marie Smith, and the need to impose at least some additional punishment for his Social Security fraud—the Court is considering an upward variance from the five-year statutory minimum to somewhere in the range of 120 to 240 months. The parties shall be prepared to discuss this possible upward variance at the sentencing hearing on May 2, 2010.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) Polly's objection to the quantity of marijuana plants attributable to him is **SUSTAINED IN PART** and **OVERRULED IN PART**. The Court finds by a preponderance of the evidence that Polly cultivated 100 marijuana plants, which subjects him to a mandatory minimum sentence of five years. 21 U.S.C. § 841(b)(1)(B)(vii).

(2) Polly's objections to the gun-related enhancements recommended in the Pre-Sentence Report for Counts One and Three are **OVERRULED AS MOOT**.

(3) Counsel shall be prepared to discuss a possible upward variance for Polly at the sentencing hearing on May 2, 2011.

This the 22nd day of March, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge